# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,      : 26-mj-00015-MMH
                               :
                               :
    - versus -                 : U.S. Courthouse
                               : Brooklyn, New York
ROBERT SACCO,                  :
                               : January 24, 2026
              Defendant        : 12:10 p.m.
------------------------------X

        TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
           BEFORE THE HONORABLE MARCIA M. HENRY
              UNITED STATES MAGISTRATE JUDGE

**A    P    P    E    A    R    A    N    C    E    S:**


**For the Government**:          **Joseph Nocella, Jr., Esq.**
                                 Interim United States Attorney

                         **BY:  Sarah A. Elardo, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York 11201



**For the Defendant**:           **Elizabeth E. Macedonio, Esq.**
                                 Elizabeth E. Macedonio, P.C.
                                 52 Duane Street, 7th Floor
                                 New York, NY 10007



**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 RL.Transcriptions2@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

THE COURT:  All right.  This is a Criminal Cause for an Arraignment on a Removal Complaint in docket number 26-mj-15, *United States of American v. Robert Sacco.*

Will counsel for the government please state their appearance?

MS. ELARDO:  Good afternoon, your Honor. Special Assistant United States Attorney Sarah Elardo appearing on behalf of the government.

THE COURT:  Good afternoon.  And counsel for the defense?

MS. MACEDONIO:  Good afternoon, your Honor. Elizabeth Macedonio for Mr. Sacco.

THE COURT:  Good afternoon, Ms. Macedonio and good afternoon to you, Mr. Sacco.

Mr. Sacco, the purpose of today's proceeding is to advise you of certain rights that you have, to inform you of the charge against you, and to decide whether you will be released on bond with conditions or whether you will be removed in custody to the Northern District of New York for prosecution on the charge.

As mentioned, there's a removal complaint here. Is Special Agent Michelle Royal present?

AGENT ROYAL:  Yes, your Honor.

THE COURT:  All right.  Can you please stand

Transcriptions Plus II, Inc.

3

Proceedings

and raise your right hand?  Do you solemnly swear to or affirm the truthfulness of your statements contained in the removal affidavit entitled United States of America v. Robert Sacco?

AGENT ROYAL:  I do.

THE COURT:  All right.  Thank you.  Having reviewed the removal complaint, I am now signing it. Today's the 24th of January.

THE INTERPRETER:  Your Honor, pardon the interruption from the interpreter.  Do you want the interpreter to interpret for the family?

THE COURT:  Not at this time, no.

THE INTERPRETER:  Okay.  Thank you, your Honor.

THE COURT:  Mr. Sacco, first, you have the right to remain silent.  If you've already made a statement, you don't have to make any others.  If you start to say something, you can stop at any time.  But any statements that you make, except statements you make privately to your attorney, can be used against you.

You also have the right to be represented by an attorney during all court proceedings including this one and during all questioning by the authorities.

Ms. Macedonio, are you in fact retained in this case?

MS. MACEDONIO:  Yes, your Honor.

4

Proceedings

THE COURT: All right. Mr. Sacco, as your counsel has stated, she is retained. However, if at any point you are unable to obtain counsel or unable to afford counsel, then you have the right to request that the Court appoint counsel for you. That appointment of counsel would be at no cost to you.

The removal complaint attaches a copy of the underlying complaint that was issued in the Northern District of New York and that contains the charge against you.

The charge in the underlying complaint is that between approximately January 1 through January 23, 2026 that you attempted to sexually exploit a child, one or more children. And that is alleged to have occurred in Albany County in the Northern District of New York.

Ms. Macedonio, have you received a copy of both the removal complaint and the underlying affidavit?

MS. MACEDONIO: I have, your Honor.

THE COURT: Have you reviewed them with your client?

MS. MACEDONIO: Yes, I have.

THE COURT: Are you satisfied that your client understands the charge against him?

MS. MACEDONIO: Yes, I am.

THE COURT: Excuse me. Mr. Sacco, because you

5

Proceedings

are charged in a complaint issued by the Northern District of New York, you have the right to a preliminary hearing in this district as to whether there's probable cause to believe you committed the crime that you're charged with there.

THE COURT: Ms. Macedonio, have you discussed this with Mr. Sacco?

MS. MACEDONIO: I have.

THE COURT: And what is the defense's position with respect to a preliminary hearing?

MS. MACEDONIO: We'd like to set it down for a preliminary hearing, your Honor.

THE COURT: All right. A preliminary hearing in the Eastern District of New York?

MS. MACEDONIO: Correct.

THE COURT: Okay. Let's put it on for -- usually that would be within 14 days. However, it can't be 14 days of a Saturday, so let me just get the calendar.

(Pause)

THE COURT: Okay. So the 13th day is Friday, February 6. So we can put that on for the 11 o'clock arraignment calendar.

And Ms. Macedonio, have you discussed with Mr. Sacco his right to an identity hearing?

6

Proceedings

MS. MACEDONIO:  Yes.

THE COURT:  And what is the defense's position with respect to the identity hearing?

MS. MACEDONIO:  We are requesting an identity hearing as well, your Honor.

THE COURT:  All right.  Okay.  Is the government prepared to proceed?

MS. MACEDONIO:  One moment, your Honor.  Your Honor, just out of logistics, would you be conducting the identity hearing at the preliminary hearing or did you want to do that here?

THE COURT:  Now.

MS. MACEDONIO:  Now.  Okay.  I actually have never done an identity hearing so in all my vast experience that's not something that I've done.  So let me just converse with the AUSA for one moment.

THE COURT:  Certainly.

MS. MACEDONIO:  Thank you.

THE COURT:  And for the record, I have done it one time as a magistrate judge which is why I know it can be done right now.

MS. MACEDONIO:  Right.  Okay.

(Pause)

MS. MACEDONIO:  Thank you, Judge.  After further consultation with my client, we are going to

7

Proceedings

waive an identity hearing.

THE COURT:  Okay.  Yes.  All right.  Just so that the record is clear, Mr. Sacco, again, based on the fact that you were arrested here in the Eastern District of New York based on a charge from another district, you have the right to an identity hearing to establish that you are the Robert Sacco who is named in the complaint that was issued out of the Northern District of New York.

Your attorney has advised me, however, that you are willing to give up or waive the right to that hearing.  By doing so, you are not admitting any guilt. Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  All right.  Then Ms. Macedonio -- actually no, Mr. Sacco, excuse me, because you were arrested again here in the Eastern District of New York based on a complaint filed in the Northern District of New York, you have the right to plead guilty to the charges here in the Eastern District of New York. In order to do that, you would have to state that in writing and then the United States Attorneys in both districts would have to agree.  That is not a decision that has to be made today, but I just have to advise you that that is something that you are -- that is available to you.

8

Proceedings

Ms. Macedonio, have you discussed this right with Mr. Sacco?

MS. MACEDONIO:  I have not actually, your Honor.  I will do so now.

THE COURT:  Okay.

(Pause)

MS. MACEDONIO:  Thank you, Judge.  I've had the opportunity to discuss that with him and I believe he fully understands.

THE COURT:  All right.  Thank you very much. Is consular notification an issue in this case?

MS. ELARDO:  No, your Honor.

THE COURT:  All right.  What about victim notification?

MS. ELARDO:  Yes, your Honor, (inaudible).

THE COURT:  Okay.  Thank you.  Can you just make sure that microphone is on because --

MS. ELARDO:  I'm sorry.

THE COURT:  Okay.  So I'm going to ask the questions again.  Is consular notification an issue?

MS. ELARDO:  No, your Honor.

THE COURT:  And is victim notification an issue?

MS. ELARDO:  Yes, your Honor.  They've been notified.

9

Proceedings

THE COURT:  All right.  Thank you.

Mr. Sacco, I'm now going to explain to counsel for the government its obligations with respect to evidence and discovery in your case.

Ms. Elardo, under Federal Rule of Criminal Procedure 5(f), I direct the prosecution to comply with its obligation under *Brady v. Maryland* and its progeny. That obligation is to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment, and known to the prosecution.

Possible consequences for noncompliance may include the following.  Dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

I'll be entering a written order more fully describing this obligation and the possible consequences of failing to meet it.  I direct the prosecution to review and comply with that order.

Does the prosecution confirm that it understands its obligations and will fulfill them?

MS. ELARDO:  Yes, your Honor.

THE COURT:  All right.  So Ms. Elardo, what is the government's position with respect to detention?

10

Proceedings

MS. ELARDO:  Your Honor, the government is requesting detention.  The originating district, the AUSAs out of the norther district, did file a detention letter that was filed on their behalf by the eastern district.  We are relying on those arguments that were made in the detention memorandum and we are seeking detention.  As this is a presumption case, it's the government's position that there's no combination or combination sufficient to return the defendant to court based on the fact that he is a danger to the community and a flight risk.

THE COURT:  Okay.  First, for the record, I have received a copy of the detention memo.  It's dated January 23, 2026 and lays out several arguments relating to detention.

Ms. Macedonio, have you received a copy of the detention memo?

MS. MACEDONIO:  I have, your Honor.

THE COURT:  Okay.  And is the defense prepared to proceed?

MS. MACEDONIO:  Yes.

THE COURT:  Okay.  So Ms. Elardo, you might answer one question for me.  On what basis, is it 3142(f)(1) or (f)(2) is the government moving for detention?

11

Proceedings

MS. ELARDO:  (f)(1), your Honor.

THE COURT:  Okay.  And that's based on the nature of the charge that was alleged in the complaint?

MS. ELARDO:  That's correct.

THE COURT:  Okay.  I find that this case is eligible for a detention hearing and at this point I understand the government's argument.  So Ms. Elardo, it seems as though you're relying and resting on those.

Ms. Macedonio, did you want to respond?

MS. MACEDONIO:  I do, your Honor.  Well, we understand the --

(Attorney's microphone is very low)

THE COURT:  Is your microphone on?

MS. MACEDONIO:  It's green.  It's indicating that it's on.

THE COURT:  Okay.  Okay.  Just tap it.

THE CLERK:  Do you mind tapping it?  Did you try the other mic where the defendant is?

MS. MACEDONIO:  (Inaudible)?

THE COURT:  Yes.  We're going to figure this out.

(Pause)

THE CLERK:  Can you try now?

(Tapping)

MS. MACEDONIO:  There we go.

12

Proceedings

THE COURT:  Perfect.

MS. MACEDONIO:  May I proceed?

THE COURT:  Yes.

MS. MACEDONIO:  While certainly I understand the nature and the severity of the charges, I don't think this is a case in which there are no combination of conditions that would ensure the safety of the community and Mr. Sacco's return to court.

First of all, the defendant is a lifelong resident of the State of New York.  For the past ten years he's been employed by the Nassau County Police Department.  He's 36 years old.  He has no prior arrests and he has no substance abuse problems.

I think the strongest indication that Mr. Sacco is going to return to court is the number of people that the family has managed to gather and bring here today on such short notice on a Saturday morning to support this defendant.  I believe there are approximately 18 people here in the courtroom.  They include his wife, his father-in-law, his brother, brother-in-law, sisters-in-law, friends, cousins, all sorts of folks that are willing to come forward and sign a bond for this defendant, a substantial bond I would suggest, noting that they wholeheartedly believe that he's going to come back to court when the Court directs him and that he's

13

Proceedings

not going to commit any further crimes while he's on release.

If your Honor would like, I have sort of a list of some of the folks that are here and willing to sign a bond for him.  Given the time constraints, I wasn't able to interview everyone.  But I would suggest that there are approximately eight to ten people who would be willing to sign the bond.

We have two pieces of property that could be posted.  Those folks include his wife, Pilar Sacco, who is present here in the courtroom.  She's 35 years old.  She works for Memorial Sloan Kettering.  She's an MRI technician.  She makes approximately 130 to $135,000 a year.  Together with her husband, they own a home in Huntington which she is willing to post in furtherance of the bond.  She's a lifelong resident of New York.  She has no prior convictions.

His brother, Dominick, is here present in the courtroom.  He also lives in Brooklyn.  He works as a college recruiter for sports and for student athletes. He makes approximately $42,000 a year.  He is a U.S. citizen.  He has no criminal convictions.

Mr. Sacco's father-in-law is here, Luis Cadavid.  He's a retired factory worker.  He lives in Yonkers with his wife where they own their own home which

14

Proceedings

has approximately $300,000 worth of equity in it. He's a citizen of the United States. He's got about $100,000 in a savings account. And I don't believe that he has any prior criminal convictions.

The defendant's sister-in-law is here. She works at a gym in Brooklyn. She makes approximately 45 to $50,000 a year. She's a green card holder. She's here legally. She has no convictions.

I can continue, your Honor, if you'd like me to but these are -- this is the nature of the folks that have come here today, hard-working people who are willing to put their financial security on the line for Mr. Sacco because that's how much they believe in him.

His cousin, Edward (indiscernible) is a New York City firefighter is here.

Another brother-in-law, Carlos Cavadavid, Cavadavid, I'm sorry if I'm not saying that correctly, works for the Department of Education. There's another sister-in-law here.

There are also some folks who quite frankly I just didn't get the opportunity to interview or they're not here yet.

So I think that given the number of people that have showed up and their willingness to put their financial security on the line, I think in part that

15

Proceedings

overcomes the government's concerns.  But I want to also suggest there are other things that are not always part of a bond that can further ensure the defendant's return to court and the safety of the community.

So for example, I would suggest that Mr. Sacco be placed on house arrest with electronic monitoring, that he would be instructed that he is not to use the internet or computers or any devices that can connect to the internet.  He himself will be posting his house.

I think given all of this, your Honor, and his own background, he's got no criminal convictions, he was a Nassau County police detective until yesterday.  I think there's a real argument here.  While I understand the severity of the charges and while I understand the government's position, it's not a situation where this is a defendant who shouldn't be released on bond given the package that we're presenting, your Honor.

MS. ELARDO:  Your Honor, may I respond briefly?

THE COURT:  You can.  And what I would -- we haven't yet had a Pretrial Services report.  Because it is a weekend arraignment, I authorized there to be an oral report.  So if you would like to respond, Ms. Elardo, you can but then I would like to hear from Officer Atkinson afterwards.

MS. ELARDO:  Thank you.  The government has

16

Proceedings

concerns with regards to all of these listed individuals, one, for the reason that there has been no information up until this point as to whether or not any of the purported suretors have children.  And I note that because there is evidence in relation to this investigation that the defendant had messaged the undercover with regards to in sum and substance stating that he was interested in his four-year-old and six-year-old niece.  There's evidence that he stated in sum and substance that he's interested in them and he's having a family party soon.

So the government has great concerns about having sufficient moral suasion from these family members.  But moreover, that the defendant will have access to a number of children.

And in addition to that, as he was previously a detective, he has access to firearms as well.

We would just like to note for the record the strength of the evidence.  There's evidence today that the defendant at the time of his arrest waived his Miranda rights and made confirmatory admissions with regards to the conversations that he had with the undercover in addition to confirming the video calls and sending the debit cards to the undercover.

And so for all of those reasons, your Honor,

17

Proceedings

the government has grave concerns about releasing the defendant due to, you know, his access to children and access to firearms, both aggravating factors that cannot be ignored.

THE COURT:  All right.  Thank you.

MS. MACEDONIO:  Your Honor, may --

THE COURT:  Can I just hear from Pretrial? Because normally you would have had the report before you made your detention arguments.  I realize that -- and I'm happy to entertain further argument after hearing the oral report.

Before you begin, Officer Atkinson, you are making an oral Pretrial Services report?

PRETRIAL OFFICER:  Yes.

THE COURT:  Okay.  Is there any objection to counsel, from counsel, excuse me, to sealing this portion of the transcript?  Because typically a Pretrial Services report would not be made public.

MS. MACEDONIO:  No, your Honor.

MS. ELARDO:  No, your Honor.

THE COURT:  Okay.  So the portion of the transcript in which the oral Pretrial Services report is being made is now sealed until further order of the Court.

(Sealed portion of transcript)

18

Proceedings

THE COURT:  Okay.  So having heard -- the oral Pretrial Services report having concluded, this portion of this transcript is no longer sealed.

Now, having heard from Officer Atkinson the oral Pretrial Services report and recommendation, I think, Ms. Macedonio, wanted to respond to the government's latest comments.

And Ms. Elardo, is there anything you want to add in light of what's been heard?  So perhaps I will allow Ms. Elardo to add, if necessary, and then Ms. Macedonio, you can respond to all of it.

MS. ELARDO:  No, your Honor.

THE COURT:  Okay.

MS. MACEDONIO:  I think the only thing that I would like to add, your Honor, is that with respect to the government's concern about weapons, first, the agents did a complete and thorough search of the home last night.  If there any weapons to be found, I'm quite certain they would have found them.  But even Mr. Sacco indicated that any firearms that he had were at his place of employment and they were taken yesterday.

With regard to his accessibility to minors, that is certainly something that we can deal with with regard to terms and conditions of the bond as far as folks being able to come over to the house or not.

Transcriptions Plus II, Inc.

19

Proceedings

THE COURT:  Well, I'm going to just pause on that point because that is a very concerning fact here which is that typically in these types of cases access to minors is an issue for the Court to consider.

In this case there appear to be in the very detailed text messages that were exchanged between a person identified as Mr. Sacco and the undercover officer that he did in fact have access to and had been admiring, I put that in quotes, two minor children that are related to him.

My concern there is that yes, there can be certainly control over where Mr. Sacco is located if he were released because he'd be required to remain in his home at all times.  But the Court's ability to control who's around Mr. Sacco or any of these minors to which he is related or any other children is unclear.

Are there children in his home currently?

MS. MACEDONIO:  No.

THE COURT:  Okay.  And so how is it that you propose that there would be control over who sees him because the Court is not -- unlike most cases where we're concerned about the defendant's movements, this is about other people's access to the defendant and his ability to have access to minors.

MS. MACEDONIO:  Understood, your Honor.  And

Transcriptions Plus II, Inc.

20

Proceedings

I --

THE COURT:  Not minors who are strangers, minors who are related to him.

MS. MACEDONIO:  I understand the Court's concern and I certainly think it can be a condition of the bond that there are to be no children that visit the Sacco home.  His family is present in court here today. They can hear everything that is being said.

And with respect to the allegations in the complaint, they're just that.  And even if we were to take these statements themselves as being made, we don't know if any of them are true.

So I understand and appreciate the Court's concerns, but I still believe that there are conditions that can be put in the bond and that can be explained to the family members that would permit this defendant to be released in a way that protects the community.

THE COURT:  Ms. Elardo?

MS. ELARDO:  Your Honor, it's the government's position that the government -- excuse me, strike that. The defendant, whether or not those children at the time of the evidence previously placed on the record by the government were in his immediate reach, it was still an issue of him having access to them, discussing plans to meet up with yet another child unrelated to him.  All of

21

Proceedings

the evidence overall of his access to minors is extremely troubling.  And the government did not have any opportunity to interview any of these suretors with regards to whether or not his brother-in-law has any children, his sister-in-law has any children, any of the family members.  And it's extremely troubling.

It's troubling, one, to hear evidence of the fact that he was engaging in conversations revolving around a child unrelated to him.  However, there has been evidence placed on the record that there is evidence to support the fact that he has been admiring and trying to get close to those children, specifically -- I'm sorry, I had written it down.  Specifically in sum and substance that he is trying to get closer to his children and that was approximately two to three weeks ago.

And so the government rests and relies on their extreme concerns that no condition or combinations of conditions could ensure that the defendant would not pose a danger to the community and his family at that.

MS. MACEDONIO:  May I briefly respond?

THE COURT:  Yes.

MS. MACEDONIO:  The charge as I understand it is an attempt.  I'm not trying to undercut the seriousness of it.  But there is no allegation that anything actually happened in this case.

Transcriptions Plus II, Inc.

22

Proceedings

And I'm also not suggesting that the defendant be released prior to the government being able to interview the suretors. Obviously, that's something that can happen. If we're going to include the posting of property, that can happen before his release as well, your Honor.

What I'm suggesting is that there certainly are conditions that can satisfy the Court's concern about the public safety and his return to court. I think that the number of people that are present here in court today are here supporting him despite the allegations overcome that.

THE COURT: I'm going to take a short recess to think about this one. I'll be back in a few minutes.

(Off the record)

THE CLERK: Judge, we're back on the record.

THE COURT: All right. So this is a second call for *USA v. Robert Sacco*, 26-mj-15.

Counsel, can you just restate your appearances?

MS. ELARDO: Sarah Elardo appearing on behalf of the government. Good afternoon.

MS. MACEDONIO: Good afternoon, your Honor. Elizabeth Macedonio for Mr. Sacco.

THE COURT: All right. So for the record, I took a short recess to carefully consider the arguments

23

Proceedings

that have been presented regarding whether or not Mr. Sacco will be detained or released while his cases pending.  And in particular, the result of the detention would be transportation in detention to the Northern District of New York to face the charges.

So understanding that there is a statutory rebuttable presumption, in some ways, Ms. Macedonio, I believe that the presumption has been rebutted based on some of the information that you have provided regarding Mr. Sacco's familial connection, his stability in the community, his steady employment until most recently and the like.

If I rely, however, on the remaining statutory factors, I'm extremely concerned about Mr. Sacco's access to children.

I think in this case the issue is that it is not just the chat messages talked about children who were not known to Mr. Sacco.  It was that he sent pictures of children that he did know as stated in the messages.  And that to me is a different in kind type of child exploitation crime than with the sort of I guess impersonal exchange of images that might be found in any chat room on the internet.  It's the proximity to children I'm having a real problem overcoming.  I think that's what tips me in favor of detention in this case.

Transcriptions Plus II, Inc.

24

Proceedings

I can't run the risk that somehow Mr. Sacco gains access to children that he knows or doesn't know even with all of the additional Adam Walsh conditions.  I think that the risk there is too great for those conditions to mitigate it.

And for those reasons I am going to order that he be detained and transported in custody to the Northern District of New York.

Now, we have scheduled a preliminary hearing here in the Eastern District of New York on February 6th. That can still stay certainly because if he's still here on February 6th, then that's a court appearance and he's going to be produced for that court appearance.  I'm directing the government to produce Mr. Sacco on February 6th at 11 a.m. here in 2A for his preliminary hearing.

However, if he is transferred before then, then Ms. Macedonio, certainly you would work with the attorney, the government's attorney in the Northern District of New York to ensure that he was having his preliminary hearing there.  Okay?

MS. ELARDO:  Your Honor, I just have a logistical question that I'm not sure if we'll be able to have that answered here or not, whether or not the marshals will, because the preliminary hearing is scheduled here for the eastern district, because of that

25

Proceedings

they will not transport him before then.

THE COURT:  That is something that you need to discuss with the marshals and make the appropriate applications as necessary.  But the hearing isn't adjourned because Mr. Sacco has a right to the hearing and he's asked for it to be here.

MS. ELARDO:  I was just bring that up for purposes of whether or not defense counsel would reconsider waiving that hearing if it does affect his ultimate removal to the originating jurisdiction.

MS. MACEDONIO:  I understand the government's concern.  I'd like some additional time to discuss that with my client and certainly I will get back to the Court in short order.

THE COURT:  Okay.  So that'll be one outstanding issue as to whether or not the preliminary hearing takes place here or in the Northern District of New York.

Similar to that point, I also wanted to put another issue on the record regarding Mr. Sacco's potential, not potential, his transfer to the Northern District of New York.  I understand that this was an arrest based on probable cause and that there is no arrest warrant.  However, after reviewing Rule 5 more carefully, I believe that there does have to be an arrest

Transcriptions Plus II, Inc.

26

Proceedings

warrant issued before there can be transfer to the Northern District of New York.  And so perhaps that's an issue that you will discuss with Ms. Macedonio as to whether or not there's going to be a warrant forthcoming from the Northern District of New York.  I realize that such warrant may not be able to be issued today as it is a Saturday, but that is certainly something that counsel should confer about because that affects Mr. Sacco's transfer.

MS. ELARDO:  Thank you.

MS. MACEDONIO:  Will do, your Honor.

THE COURT:  Okay.  Ms. Macedonio, is there any other issue that you wanted to raise on Mr. Sacco's behalf?

MS. MACEDONIO:  To the extent that the Court has any control over this, I'm concerned about his housing.  Until yesterday, he was a member of the Nassau County Police Department.  I would think that he just cannot be put in general population at let's say the MDC.

So I would ask that the Court direct that he be housed in a secure environment to protect his safety.

THE COURT:  Ms. Elardo?  Ms. Macedonio is raising a valid concern.

MS. ELARDO:  Yeah, absolutely, your Honor.  I believe that he would be separated out of general

27

Proceedings

population.  I can direct the agents to discuss with the MDC or where he'll be placed after this.

THE COURT:  Ms. Macedonio, as you're aware, I'm able to direct the government as to what it does and so what I'm going to direct counsel for the government to do is to, yes, confer with your agents and of course the MDC, or whatever facility Mr. Sacco is placed at, needs to be made aware of his status and the fact that his safety is an issue because of the nature of his former employment as a detective and that he should not be placed in general pop.

MS. MACEDONIO:  That's all I have for now. Thank you, Judge.

THE COURT:  Okay.  Any health or other issues to be addressed in a medical memo?

MS. MACEDONIO:  No.

THE COURT:  Okay.  Any other issues you wanted to raise?

MS. MACEDONIO:  Thank you, but no.

THE COURT:  Okay.  Ms. Elardo, is there anything else on behalf of the government?

MS. MACEDONIO:  No, your Honor.  Thank you.

THE COURT:  All right.  Then this proceeding is adjourned.  Thank you, everyone.

(Matter concluded)

28

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **10th** day of **February**, 2026.

_Mary Greco_
Transcriptions Plus II, Inc.