UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

UNITED STATES OF AMERICA,                     :

                                                      :          Case No. 1:26-cr-00031-MAD

                                     Plaintiff,       :

        v.                                             :

                                                      :

ROBERT SACCO,                                     :

                                                      :

                                    Defendant.     :

------------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR BAIL**
**PURSUANT TO 18 U.S.C. § 3142(f)**


 

GOTTLIEB TOWNSEND
111 Broadway, Suite 701
New York, New York 10006
(212) 566-7766 (phone)

*Attorneys for Defendant*
*Robert Sacco*

**PRELIMINARY STATEMENT**

Defendant Robert Sacco, by and through his undersigned counsel, Gottlieb Townsend hereby submits this memorandum of law in support of Mr. Sacco's application for pretrial release with conditions. For the reasons that follow, Mr. Sacco submits additional proposed bail conditions that specifically address the concerns of the arraignment judge, Honorable Marcia M. Henry, United States Magistrate Judge in the Eastern District of New York, who agreed that Mr. Sacco rebutted the presumption of detention based on an analysis of the factors set forth in 18 U.S.C. § 3142(g) but her primary concern was Mr. Sacco's access to children. *See,* January 24, 2026, Eastern District of New York Arraignment Transcript, attached as Exhibit A, at 23:6 – 15.

Mr. Sacco respectfully proposes a combination of conditions initially proposed by Pretrial Services in the Eastern District of New York as well as multiple new conditions that will reasonably assure his appearance and which abate any previously *suggested* risk of his potential access to children.

**PROPOSED BAIL CONDITIONS**

Mr. Sacco's proposal incorporates all the terms recommended by Pretrial Services (*See*, Dkt. No. 10, at 4) and includes additional conditions which are in **bold** below:

- **A Personal Recognizance Bond in the amount of $1,000,000, secured by two financially responsible persons, Mr. Sacco's Aunt, Jean Tan and Mr. Sacco's father-in-law, Luis Cadavid;**

- **Cash posted in the amount of $100,000 by Luis Cadavid, Mr. Sacco's father-in-law;**

- Report to Pretrial Services as directed;

- Surrender any passport(s) and do not apply for or obtain a new passport;

- Restrict travel to New York City, Long Island, and the Northern District of New York;

1

- Submit to random home and community contact by Pretrial Services;

- Subject to home detention with location monitoring, enforced by Global Positioning System(GPS), with leave for court appearances, attorney visits, medical appointments, employment, and treatment specific to the offense charged, and other activities approved by Pretrial Services;

- Surrender firearms to local law enforcement authorities and submit verification of same to Pretrial Services;

- Submit to mental health treatment, **both individual and group therapy once a week with Dr. Shoshanna Must for sex offense therapy.**   The defendant shall pay all or part of the cost of any required mental health treatment based on the ability to pay as determined by Pretrial Services;

- Refrain from areas frequented by children under the age of 18, including school yards, parks, playgrounds, fast food restaurants near schools, and arcades;

- Refrain from using computers or accessing the internet through any means.  **All computers will be removed from Mr. Sacco's residence.**  Consistent with Pretrial Services' Computer Restriction and Monitoring Program, Pretrial Services may inspect the home network, cellular phones, data and storage media devices, and/or external hard drives belonging to the defendant and/or located at the residence;

- Shall not have any contact or association with individuals under the age of 18.  The defendant shall not communicate with any person under the age of 18 through written correspondence, telephone, or any electronic means.

- Avoid all contact, direct or indirect, with any person who is or who may become a victim or potential witness in the subject investigation or prosecution;

- Maintain residence at home in Huntington, New York;

- **A rotation of family members will be present in Mr. Sacco's home at all times to oversee him including Mr. Sacco's wife, Pilar Sacco, Mr. Sacco's mother-in-law and father-in-law, Silvia and Luis Cadavid, Mr. Sacco's brother, Dominick Sacco. Mr. Sacco's father, John Sacco, Mr. Sacco's stepmother, Divina Sacco, Mr. Sacco's sister-in-law Anais Sacco, and Mr. Sacco's aunt, Mimadelia Mendez.  Any person coming into the home will not bring any electronics other than personal cell phones with password protection.  If a laptop is necessary, then that person will make sure that there is two-factor authentication on the laptop connected to their personal cell phones; and**

- **Pretrial Services will be given remote access to Mr. Sacco's security cameras that are currently set up at his home to ensure that no minors come inside or near the home.  The cameras are set up through the Paramont CMS by InVid**

2

**Tech application.  The username and password for remote access will be provided.  The camera model is PD1B-8NH2. [1]**

These proposed conditions should sufficiently mitigate any fear that Mr. Sacco would flee, or that he poses any risk to the community.  If Mr. Sacco is released with these conditions, he will also be in a position to start sex offender treatment and therapy for which he is an excellent candidate and highly treatable.  *See*, March 20, 2026 Eric Goldsmith, M.D. Letter, attached as Exhibit B, at 3.  Accordingly, taken in combination, these conditions present a very substantial comprehensive bail package that will reasonably ensure the appearance of Mr. Sacco at all future court appearances and ensure the safety of the community.  18 U.S.C. § 3142(c)(1)(B) (emphasis supplied); *see also,* §§ 3142(c)(1)(B)(i)-(xiv) (enumerating conditions which may be imposed at the court's discretion).

## PROCEDURAL HISTORY

Robert Sacco was arrested in the Eastern District of New York pursuant to a complaint on January 24, 2026 charging him with violations of 18 U.S.C. § 2251(a) and (e) in the Northern District of New York.  On January 24, 2026, Mr. Sacco appeared in the Eastern District of New York before the Honorable Marcia M. Henry, U.S. Magistrate Judge, for his initial appearance before being transferred to the Northern District of New York.  During the initial appearance Judge Henry ultimately remanded Mr. Sacco but recognized that "*in some ways... the presumption has been rebutted based on some of the information... regarding Mr. Sacco's familial connnection, his stability in the community, his steady employment...however on the remaining statutory factors, I'm extremely concerned about Mr. Sacco's access to children.*"  *See,* Ex. A, at 23:6 – 15.

---

[1] All angles of the cameras can be made available to the Court upon request.  Currently, there are approximately eight cameras set up throughout the perimeter of the property.

3

On January 28, 2026, a grand jury indicted Mr. Sacco on one count of Attempted Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a) and (e).  On February 3, 2026, Mr. Sacco was arraigned in the Northern District of New York before U.S. Magistrate Judge Daniel J. Stewart who primarily relied on Judge Henry's detention order.  *See*, February 3, 2026 Text Minute Entry for Arraignment.

<u>**ARGUMENT**</u>

The defense is cognizant of the statutory presumption for bail that arises with certain offenses, including crimes involving minor victims, as specified in the Bail Reform Act of 1984, codified at 18 U.S.C. § 3142(e).  This presumption while assumed, is subject to rebuttal.  The analysis of the factors set forth under § 3142(g) overwhelmingly rebut the presumption of detention and demonstrate that there are conditions of release that will reasonably assure both Mr. Sacco's appearance in court and the safety of the community.

**I.      The Applicable Legal Standard**

The Supreme Court has held that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Accordingly, under the Bail Reform Act, the Court is required to impose pretrial release "subject to the *least restrictive*...condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(c)(1)(B) (emphasis supplied); *see, §§* 3142(c)(1)(B)(i)-(xiv) (enumerating conditions which may be imposed at the court's discretion).

Additionally, when a defendant is charged with an offense involving a minor under 18 U.S.C. § 3142(e)(3)(E), there is a presumption subject to rebuttal by the defendant, that "that no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(3). The presumption of detention places a limited burden of production – not a burden of persuasion – on the defendant to present evidence that he does not pose a danger to the community or a risk of flight. *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018). Satisfying the burden of production does not eliminate the presumption of detention, it remains a factor to be considered among those weighted by the district court. *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011). However, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight. *Id*.

The Bail Reform Act requires the Court to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence...;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person including-
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). Upon consideration of all these factors, if the Court finds that there are conditions that will reasonably guarantee the person's appearance and the safety of the community, the person must be released. 18 U.S.C. § 3142(c)(1).

## II.    Section 3142(g) Factors

Acknowledging that the crime that Mr. Sacco is facing carries a rebuttable presumption of detention, we submit that the evidence overwhelmingly rebuts the presumption that he poses a danger to the community or is a flight risk.  *See,* 18 U.S.C. § 3142(c)(1)(B).

### a.    Nature and Circumstances of the Offenses Charged and the Weight of the Evidence

As discussed above, Mr. Sacco is facing a serious charge involving a crime against a minor in January 2026.  *See,* Dkt. No. 4.  Since this matter is at the early stages of Rule 16 discovery, the evidence that has been produced is contained within the criminal complaint (*see,* Dkt. No. 1) which references various text communications on a social networking application that allegedly occurred between Mr. Sacco and an FBI undercover agent.  Since the initial appearance and order of detention, the defense has received additional discovery from the government.  Specifically, we have screen recordings of the FetLife and Wire chats between the FBI undercover agent(s) and Mr. Sacco; photographs exchanged between FBI undercover agent(s) and Mr. Sacco, Gmail correspondence between FBI undercover agent(s) and Mr. Sacco, search warrants, and the video recording of Mr. Sacco's "interview" on January 23, 2026.   Based on the information obtained from the government as well as the Complaint, Mr. Sacco well understands the evidence against him and the mandatory punishment if he is convicted of all charges.

However, the nature of the crime alleged in this Indictment and any evidence that might be produced does not preclude pretrial release.  In fact, as Your Honor will read, *infra*, in **Section III**, courts in the Second Circuit have permitted pretrial release of defendants in cases involving similar charges.  Therefore, the nature of the offenses charged, and the potential weight of the evidence similarly does not preclude the release of Mr. Sacco under certain conditions, considering Dr. Eric

6

Goldsmith's preliminary opinion as well as Mr. Sacco's strong family ties, exceptional character, professional accomplishments, and impressive volunteer commitments.

### b.  Danger to the Community

#### i.  Preliminary Psychiatric Opinion and Sex Offender Treatment

On February 25, 2026, Eric Goldmsith, M.D., conducted an in-person interview with Mr. Sacco for approximately three and a half hours at Delhi County Jail and a follow up interview via Zoom for about an hour and a half on March 6, 2026.  *See,* Ex. B, at 1.  As a result of these interviews as well as an interview with Mr. Sacco's wife, Dr. Goldsmith recommends that Mr. Sacco be released on bail with appropriate monitoring of his electronic communications so that he may initiate his required mental health treatment.  *Id*, at 4.  **Dr. Goldsmith explains that Mr. Sacco's "is now ripe for treatment" and his "offense behavior is currently highly treatable**." *Id*, at 3.  Further, Mr. Sacco's current distress fuels his motivation to begin treatment for the purpose of extinguishing his sexual offending behavior, and if treatment is delayed, Mr. Sacco will likely experience a hardening of his psychological defenses making future treatment less effective. *Id*.

Dr. Goldsmith's preliminary evaluation revealed that Mr. Sacco was exposed to numerous traumatic events during his childhood.  *Id*, at 2.  Between the ages of approximately 10 and 16, Mr. Sacco was subject to incidents of sexual contact and abuse by a male neighbor who was four years older than him.  *Id*.  Mr. Sacco was sexually fondled by this individual and engaged in mutual masturbation, oral and anal sex.  *Id*.  There was also additional sexual contact with a separate male individual who was approximately one year older, and he had engaged Mr. Sacco in masturbatory and oral sex acts.  *Id*.  Mr. Sacco was also a victim of sexual abuse by an adult female, the mother of one of his hockey teammates, when he was 17 years old.  *Id*.  He was invited over to his

teammate's home and exposed to several incidents of sexual touching and vaginal penetrative sex. *Id*.

Mr. Sacco now understands that the behavior that led to his arrest stems from his exposure to childhood sexual abuse and hyper sexualization. *Id*, at 3. "**He shows remorse over his behavior and has victim empathy** and is **highly motivated to receive sex offender treatment** for the purpose of extinguishing consensual sexual fetichism interests, reducing sex drive and strengthening his monogamous sexual interest. *Id*. Using sex offender researcher Michael C. Seto, PhD's Motivation-Facilitation model of sexual offending as a guideline, Mr. Sacco's offense behavior appears to have been motivated by his high sex drive, kink sex fetichism interest and his mating effort interest in acquiring new sexual partners. *Id*. However, **most importantly, there is no evidence that Mr. Sacco's offending behavior was facilitated by problematic antisocial factors, an inappropriate sexual interest in children, alcohol or substance abuse.** *Id*. Rather, his offending behavior was driven by non-paraphilic sexual motivation. *Id*. Stated differently, Mr. Sacco has no interest and reports not being aroused to nonconsensual sexual activity and it was not facilitated by external factors other than opportunity with access to an online chatting platform. *Id*. **Nor does he hold distorted rationalizations that sex with a minor is healthy; he does not have antisocial attitude; he has no history of interpersonal violence; he does not receive pleasure from inflicting pain on others or causing suffering; and finally, he has no prior history of engaging in rule or law-breaking behavior**. *Id*, at 2.

There is no question that while incarcerated pre-trial, there are unfortunately no appropriate sexual treatment programs available to Mr. Sacco. *Id*. For Mr. Sacco to resolve his mental health issue and not pose a future threat to the community or be at risk of reoffending he requires a specific community-based treatment program. *Id*. Dr. Goldsmith has already contacted Shoshanna

Must, PhD, a nationally recognized expert in sex offender assessment and treatment, who confirmed her availability immediately to assess and treat Mr. Sacco if he is released under the proposed strict conditions. *Id*, at 4. Accordingly, Dr. Goldsmith concluded to a reasonably degree of psychiatric certainty that Mr. Sacco is safe for release on bail, so that he can begin outpatient sex offender treatment with Dr. Must who can address the goals of reducing his sex drive, kink sex interest and gaining better self-control. *Id*, at 3.

### c.  Mr. Sacco's History and Characteristics

#### i.  Upbringing and Professional Accomplishments

Robert John Sacco is the oldest of two and comes from a Filipino, Irish Italian household. He was born and raised in Brooklyn, New York.  His mother, Jocelyn Tan, was an Emergency Room nurse, and his father, John Sacco, was a highway patrol police officer.  Rob was the eldest grandson born in the United States and very much loved and cared for by family. Unfortunately, when Rob was about six or seven years old, his mother passed away at the age of 35.  She was diagnosed with breast cancer while she was pregnant with his younger brother, Dominick Sacco. In order to give birth to Rob's younger brother, his mother delayed cancer treatment and tragically died a couple months after Dominick's first birthday.  This is a part of Rob's life that he truly never spoke about over the last 17 years.

After his mother's passing, the Sacco family become deeply involved in the hockey community.  Rob attended Catholic schools throughout his childhood and dedicated most of his time to playing hockey and video games.  He is also fluent in two languages, English as the primary and Tagalog (Filipino) is the second.  Throughout middle school and high school, he excelled academically and in hockey.  Initially, he attended St. Edmund High School where he played for the hockey team.  Eventually, since he was also playing hockey for a club team in Long Island, he

was recruited to go to St. Mary's High School where he won a state championship. He attended Farmingdale State College and studied engineering in his freshman year in college. He eventually transferred to Stony Brook University to pursue a collegiate ice hockey career. Throughout college, Rob consistently worked various jobs to help pay for his expenses. Stony Brook University is also where Rob met his current wife, Pilar, and they have been together for nearly eighteen years, other than a short break up for about six months in 2016.

In 2009, Rob was unfortunately unable to afford to live away from home and was forced to drop out of Stony Brook. At that time, he started working at a friend's Verizon store while simultaneously taking civil service exams. During this time, he also wanted to stay involved with the ice hockey community and began coaching children and adults at Aviator, a private hockey club. *See*, 2014 Aviator Hockey Club Photo, attached as Exhibit C. In 2016, Rob was accepted to the police academy in Nassau County, where he maintained employment until the instant matter. While at Nassau County Police Department he was promoted to the rank of detective in 2020. Throughout his life, Rob consistently prioritized his volunteer commitments and giving back to his community.

### ii. Volunteer Commitments

The extent of Mr. Sacco's positive impact on his community and dedication to volunteer work is extraordinary. Over the last 10 years, Mr. Sacco has routinely donated blood at least five to six times per year at the New York Blood Center because of his status as a universal blood donor with O blood type and is considered a member of the "Gallon Club."[2] More recently, in 2018, the Sherrif's son in Nassau County was sick with terminal cancer and Mr. Sacco participated in an

---

[2] *See* New York Blood Center's Facebook Post, https://www.facebook.com/newyorkbloodcenter/posts/did-you-know-nybc-has-a-gallon-club-every-blood-donor-is-in-it-after-your-first-/10155588051165186/, last accessed on March 19, 2026.

event to raise money called "Love for Luis." *See,* Love for Luis Flyer, attached as Exhibit D. This event raised approximately $11,000.

Since Mr. Sacco was a member of law enforcement, many of his volunteer commitments in recent years have revolved around civil service and his love for hockey. Mr. Sacco consistently organized a first responder's hockey charity tournament called "Heroes Cup Battle of the Badges Tournament" in Marlborough, New York. *See*, *generally,* F Troop Hockey Club Facebook Posts, attached as Exhibit E. This event raised money for various local charities over the years including, Beyond the Badge for mental health in 2022, and Cops for Kids with Cancer in 2023. *See,* F Troop Hockey Club Charity Fundraiser Flyer, attached as Exhibit F. Also, since 2023, he participated in the Orlando Fire Department Tournament, which is a first responder's hockey charity tournament that raised money for the fire department's charity of choice. In 2024, he not only played in the Gerrin Hagen Memorial Hockey Day Tournament but also dedicated his time to advertising the event and encouraging family members and friends to support the cause. *See*, January 9, 2024 NCPD Hockey Instagram Photo, attached as Exhibit G. Mr. Sacco organized a partnership with the New York Islanders to have the kids in the community learn about ice hockey called "Break the Ice." *See*, Photo of New York Islanders, attached as Exhibit H. The Islanders team donated equipment, and Mr. Sacco along with his teammates volunteered to teach the kids to skate and use the equipment. He also took it upon himself to take over Nassau County's 4th Precinct F-Troop hockey team in 2016. Mr. Sacco successfully grew the team from about 12 – 15 full time players to three different teams with about 45 – 60 full time players. He obtained sponsorships from local businesses and organized charity hockey events involving court officers, Suffolk Police Department, Suffolk Sheriff's Department, and Custom's and Boarder Protection.

11

His charitable contributions did not exclusively involve hockey and civil service; he also found ways to raise money and dedicate his time in support of those in his immediate community. Mr. Sacco raised money for a colleague's wife who was ill with breast cancer and sold about $3,000 worth of T-shirts to raise funds for an event. *See,* November 18, 2020 Facebook Post re: Movember Fundraiser, attached as Exhibit I. While he was living in Brooklyn, he would routinely check in on a friend who was diagnosed with cerebral palsy. Even once he moved away, he was so concerned that he posted on his Facebook profile asking friends to make sure that she was protected and cared for. *See*, August 11, 2019 Facebook Post re Brooklyn Friend, attached as Exhibit J.

In 2025 alone, he participated in a charity hockey game for children with Congenital Heart Defect, and he organized another charity hockey event entitled "Pucks for A Purpose" in honor of the Resnick family and ALS Ride for Life Foundation. *See*, Pucks for A Purpose Resnick Benefit Game Flyer, attached as Exhibit K. He successfully raised money for a coworker who passed away from ALS and whose son was diagnosed with Leukemia. Mr. Sacco coordinated this event from beginning to end. He sold merchandise and tickets, created a raffle, and ultimately raised approximately $7,000 for the family and $4,000 for the ALS Ride for Life foundation. The extent of Mr. Sacco's involvement in his community and volunteer commitments is only a small aspect of his exemplary character.

### iii. Mr. Sacco's Exemplary Character

Mr. Sacco is known among his family and peers to be a hardworking, honest, respectful and caring person. Fifty various family members and friends have submitted letters on Mr. Sacco's behalf and expressed their unwavering support for Mr. Sacco and the positive attributes they witnessed over the course of many years. He naturally treats others with patience and empathy

and is always willing to help without expectation.  *See*, February 1, 2026 Letter from Justine Khor, attached as Exhibit L.

Mr. Sacco's caring nature has been evident since he was a young man.  Pilar Sacco, Mr. Sacco's wife, first met him when they were both students at Stony Brook University.  *See,* March 18, 2026, Letter from Pilar Sacco, attached as Exhibit M, at 1.  Early in their relationship, she became seriously ill with the flu and was unable to get out of bed.  *Id*.  Without hesitation, Mr. Sacco carried her to the student health clinic and stayed with her until her family arrived.  *Id*.  This gesture of putting others before himself became a constant in not only their relationship but also Mr. Sacco's everyday life.

He embraced his wife's large, Spanish-speaking family, making the effort to learn Spanish so that he could communicate with her relatives and be part of their culture.  *Id*.  He taught her siblings and cousins how to ice skate, and attended their soccer games, birthdays and religious celebrations routinely.  *Id*.  His compassion extends far beyond his own family.  *Id*.  Throughout the years he has organized many charity events and volunteered his time coaching youth hockey, providing guidance and mentorship.  *Id*.  During the COVID-19 pandemic, he served on the front lines in law enforcement as well as traveled three and a half hours to deliver groceries to his elderly relatives who were ill and unable to leave their home.  *Id*, at 2.

In addition, he brought a friend food who was in the hospital recovering from major surgery, he attended funerals of friends' parents, supporting them during difficult times, and helping without being asked.  *See,* January 29, 2026 Letter from Anna Ronda, attached as Exhibit N.  He would drive for hours, rushing to ensure that he paid his final respect to his godfather.  *See*, March 11, 2026 Letter from Cheryl Hastings, attached as Exhibit O, at 1.

13

More recently, in March 2021, after being married for about three months, his wife suffered from a life-altering injury that left her unable to care for herself for over two years. *Id*. During this time, Mr. Sacco became the primary caregiver and assisted her with all aspects of daily life including bathing, dressing, feeding, attending medical appointments, and recovering from various procedures. *Id*. "**His life has been defined by service – to his family, to his community, and through his profession**." *Id*.

Even those who have met Mr. Sacco more recently immediately recognized his positive nature. Dylan Fawcett, a friend who Mr. Sacco met through the hockey world in 2020, recalls a few years ago when Mr. Sacco invited him to join his family for Thanksgiving. *See,* March 3, 2026 Letter from Dylan Fawcett, attached as Exhibit P. This invitation was especially thoughtful to Mr. Fawcett because his family is extremely disconnected and does not celebrate the holidays. *Id*.

When Mr. Sacco was very young, his mother passed away, and he took it upon himself to become a mentor and role model for his younger brother. *See*, February 9, 2026 Letter from John D. Sacco, attached as Exhibit Q. Ever since that moment he made every effort to ensure his brother's safety as well as prioritize his well-being and assist with his career every step of the way, even at the expense of his own hockey ambitions. *See*, March 10, 2026 Divina O. Sacco Letter, attached as Exhibit R.

The person known to Mr. Sacco's family and friends is not defined by this moment. *See,* Ex. N. They all know Robert as someone with a genuinely caring heart – someone who has shown kindness when it was not required and loyalty when it was not convenient. *Id*. Many have personally witnessed him supporting people quietly, without needing recognition, and offering support in ways that felt sincere and real. *Id*.

There are many more letters of support which we encourage the Court to read through, additional stories of Mr. Sacco's generosity and kindness.  These letters showcase the true character of a man whose sole focus is to be a positive impact on those around him, responsible, reliable, loving, and caring.  The remainder of these letters are attached collectively as Exhibit S.

### III.    A Review of Similar Cases in this Circuit Support Mr. Sacco's Release with Conditions

Courts in the Second Circuit have released defendants who have been charged with similar child pornography offenses.  Even though the Bail Reform Act presumes that for certain offenses, pretrial detention is appropriate as no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community, this presumption may be rebutted.  *United States v. Deutsch*, 2020 WL 3577398, at *4 (E.D.N.Y. 2020).

For example, in *United States v. Deutsch,* the court ordered the defendant released from pretrial detention subject to a $100,000 bond secured by his parents' home and 17 conditions of release, including location monitoring, no use of internet-capable devices, installation of computer monitoring software, and control and monitoring of internet routers.  *Id*.  The government appealed the court's order and thereafter secured a superseding indictment, adding six attempted sexual exploitation of a minor counts arising from the same conduct as the original five-count indictment of Sexual Exploitation of a Child, in violation of 18 USC §§ 2251(a), 2251(e) and 3551 *et seq*.  *Id*. Despite the additional charges, the court found that the defendant **had rebutted the presumption that no conditions or combination of conditions can reasonably assure the safety of the community or his appearance.**  *Id*, at *5.

The court explained that pretrial services informed the Second Circuit Court of Appeals that it possessed complete control of the internet in the defendant's home, and that defendant had been in full compliance with all the conditions.  *Id*.  As to the defendant's risk of flight, the

15

defendant was subject to GPS location monitoring and his future appearance in court was secured against his parents' home. *Id*. Overall, the court concluded that the aforementioned conditions **satisfied the court that the defendant was not a risk of flight** and that embracing the government's argument would amount to setting a *de facto* rule that anyone charged with similar conduct must be held in pretrial detention. *Id*, at \*5 - \*6.

Additionally, in *United States v. Lee*, the defendant was arrested and charged with four counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). *United States v. Lee*, 972 F. Supp. 2d 403, 404 (E.D.N.Y. 2013). The court released the defendant on a series of conditions recommended by pretrial services, including home confinement, electronic monitoring, and a ban on both computer and internet use, and a bond of $200,000 secured by the home of the defendant's parents. *Id*.

In one other example, the defendant was arrested and accused of knowingly receiving the production of sexually explicit conduct involving one or more minors and using any means or facility of interstate or foreign commerce by any means including a computer. *See United States v. Roy Naim,* Case No. 1:13-cr-00660, at Dkt. No. 1. More specifically, Homeland Security Investigations ("HIS") initiated a joint investigation into the possession, access with intent to view, transportation, receipt, distribution and reproduction of child pornography. *Id*. Following the initial appearance, the defendant was ordered to pretrial detention. *See*, *United States v. Roy Naim,* Case No. 1:13-cr-00660, at Dkt. No. 3. However, the following day, the defendant presented a bail package, which the government opposed, and the court released the defendant on a $250,000 bond with some conditions. *See*, *United States v. Roy Naim,* Case No. 1:13-cr-00660, at Dkt. No. 5.

16

All the above-referenced examples include defendants who were charged with similar and/or more serious crimes. Notwithstanding the severity of the crimes, the court granted pretrial release with certain conditions.

## CONCLUSION

We respectfully submit that a thorough review of all the factors set forth in 18 U.S.C. § 3142(g) rebuts the presumption of detention as it applies to Robert Sacco. Certainly, this Court must consider the serious charge and the possibility of incarceration if convicted. However, as courts in this Circuit have recognized in cases similar to this one, the question is whether there are a set of conditions that would reasonably assure the safety of the community and Mr. Sacco's appearance in court despite the serious nature of the crime. Here, the evidence supports an affirmative answer. Mr. Sacco has a pristine employment record; he has never been in trouble with the law prior to the instant case; he is a positive impact in his community; he intends to participate in sex offender therapy; he would have constant supervision by various family members; and most critically, Pretrial Services will have access to the security cameras on Mr. Sacco's property to ensure that he has no access to children.

For those reasons, Mr. Sacco respectfully requests the Court grant the defendant's motion for pretrial release under the terms and conditions as set forth herein, and for such other and further relief as may be just and proper.

Dated: New York, New York
March 26, 2026

By:    /s/ Robert Gottlieb_____
Robert C. Gottlieb, Esq.
Paul R. Townsend, Esq.
GOTTLIEB TOWNSEND
111 Broadway, Suite 701
New York, NY 10006
*Attorneys for Defendant*
*Robert Sacco*

17