UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

         v.

1:26-CR-31
(MAD)

ROBERT SACCO,

                Defendant.

APPEARANCES:                OF COUNSEL:

U.S. ATTORNEY'S OFFICE       ALLEN J. VICKEY, ESQ
445 Broadway
Room 218
Albany, NY 12207

GOTTLIEB TOWNSEND        ROBERT C. GOTTLIEB, ESQ.
Attorney for Defendant         KAYLEE KREITENBERG, ESQ.
111 Broadway
Suite 701
New York, NY 10006

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

## I. PROCEDURAL HISTORY

On January 23, 2026, Defendant was charged by Criminal Complaint with Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e). Dkt. No. 1. The Defendant was arrested and then arraigned the next day before Magistrate Judge Marcia Henry in the Eastern District of New York. Dkt. No. 20-2. At that initial appearance a Detention Hearing was held, and after hearing argument Judge Henry ordered Defendant's detention. *Id*. As noted by the Magistrate Judge: "I can't run the

- 1 -

risk that somehow Mr. Sacco gains access to children that he knows or doesn't know even with all the additional Adam Walsh conditions. I think that the risk there is too great for those conditions to mitigate it." *Id.* at p. 24. The Defendant was transferred to the Northern District of New York and on February 3, 2026, he was arraigned on an Indictment for the same charge. Text Minute Entry dated February 3, 2026; Dkt. No. 4.

On March 26, 2026, counsel for Defendant Sacco filed a Motion with the Court seeking a new detention hearing. Dkt. No. 20. That Motion did not constitute an appeal of Magistrate Judge Henry's decision, which would properly be before the District Court of the prosecuting district, *see United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003), but rather, in essence, sought to reopen the detention hearing upon the grounds of new and material evidence. 18 U.S.C. § 3142(f).

In support of the Motion, counsel for the Defendant offered a number of documents, with the most significant being a psychiatric evaluation of Mr. Sacco by Dr. Eric Goldsmith. Dkt. No. 20-3 (Initial Report dated March 20, 2026). As noted in the report, it was prepared over a period of weeks and involved multiple hours of interviews. Amended Report at p. 2. While a more fulsome discussion of the Doctor's opinions is contained later in this decision, Dr. Goldsmith concluded that: Defendant's behavior was not facilitated by an inappropriate interest in children; Defendant was amenable to treatment; and, under conditions of monitored access to online platforms, Mr. Sacco would not pose a threat to the community if released on bail. *Id*. The remaining submissions in support of the Motion: detail suggestions to the Court for restrictive conditions of release; contain numerous statements from friends and family in support of

the Defendant and attesting to his character; and evidence Defendant's work within the community, including photographs of the Defendant with various youths in connection with his activities as a hockey coach.  Dkt. No. 20-1-21.

The Government has opposed the Motion for Bail upon the grounds that the Defendant still poses a significant danger to the community and is a risk of flight, and no conditions exist that can reasonably mitigate these risks.  Dkt. No. 27.  The Government highlighted the months-long series of online communications between the Defendant and the purported father of a ten-year-old girl who had hearing and speech disabilities.[1]  *Id.* at pp. 1-7.  The discussions included: the child being sexually abused by the father; whether the child should watch the Defendant masturbate; a video of Defendant ejaculating over a photo of the purported child; a request for naked photos of the child; Defendant proposing purchasing underwear for the child to help her feel more comfortable about engaging in sex acts with him and sending an Amazon gift card to accomplish that; discussing the child urinating or being urinated upon; traveling to the Albany area to admire the child and possibly shower with her; planning a video chat with the ten-year-old and discussing sexually explicit acts he wanted the UC to perform to the child; listening to a recording of the ten-year-old child allegedly being molested and moaning "feels so good daddy;" discussions of inserting objects into the child's vagina and purchasing a "tiny" butt plug to have the father use on the child to prepare her; and discussing having the child perform oral sex on her father.  *Id.*  The Government also

---

[1] As noted by defense counsel, but admittedly unknown to the Defendant himself, the father of the child was in fact an undercover police officer ("UC") and the child was fictitious.  When photographs of the child were sent by the UC to the Defendant, they were aged regressed.

noted that, in order to obtain photos of the purported child, the Defendant sent to the UC nine pictures, which Defendant claimed depicted his two young relatives (clothed), including a five-year-old girl. *Id*. at p. 1. The Government highlights the fact that the Defendant was an acting detective in the Nassau County Police Department and, though being advised of the active abuse of a ten-year-old by her father, the Defendant never reported this conduct to law enforcement authorities, and in fact was sexually stimulated by it. *Id.* at 11.

While this Court has no authority to direct a psychiatric evaluation of the Defendant, *United States v. Martin-Trigona*, 767 F.2d 35, 38 (2d Cir. 1985), a copy of Dr. Goldsmith's report was sent by the United States Probation Department to their contracted provider New Paradigm Psychological Services, PLLC ("New Paradigm"), for review and assessment. New Paradigm's Brief Risk Assessment, done without the benefit of an interview with Defendant, was supplied to the Court and counsel and reviewed. That group's finding was that the Defendant posed an average risk of reoffending. The Report noted issues with Defendant's diminished concern for the well-being of the purported minor, and the prioritization of his sexual interests over potential harm. *Id.* It also noted a high level of sexual preoccupation, and ongoing sexual focus and escalation. *Id.* On the other hand, the Report identified the Defendant's history of stability, the fact that he takes responsibility for his actions, and the fact that he has no prior criminal history as mitigating factors. *Id.*

## II. RENEWED DETENTION HEARING

Based upon the filings with the Court, this Court set the matter down for a renewed Detention Hearing on May 5, 2026.  Dkt. Nos. 23 & 29.  Pursuant to U.S.C. § 3142(f)(2), a judicial officer has the discretion to reopen a detention hearing at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.  The Bail Reform Act leaves the decision to reopen a hearing to the sound discretion of the district court.  *United States v. Zhang*, 55 F. 4th 141, 148 (2d Cir. 2022).

In the Court's view, while many of the issues regarding family support and proposed conditions of release were items that were known, or could have been articulated, during the first detention hearing, the psychiatric assessment of the Defendant was not available at that time.  Because I found that the Goldsmith Report, which deals with complex psychological issues relevant to the case, may well be material to a detention decision, I concluded that a renewed detention hearing was appropriate.

The Renewed Detention Hearing was held on May 5, 2026.  Prior to that Hearing, the Court reviewed the briefs of the parties, the original Complaint, the Indictment, the Pretrial Services Report, copies of text messages and images that were sent between the UC and the Defendant, including the encrypted messages, and the psychological assessments by Dr. Goldsmith and New Paradigm.  Plaintiff and his counsel appeared for

the Hearing, as did numerous members of his family and other individuals in support of release.

In addition to hearing argument from counsel, the Defendant presented Dr. Goldsmith to testify and to be cross-examined. Dr. Goldsmith is a well-qualified expert in the field of psychiatry, with experience performing both competency examinations as well as risk assessments for sex offenders. In addition to interviewing the Defendant and his wife, he also reviewed certain documented messages between Defendant and the UC. A separate subset of encrypted messages between those two individuals, however, was not reviewed by the Doctor.

Dr. Goldsmith noted that Defendant Sacco was sexually abused as a minor both by a slightly older male neighbor, as well as the mother of one of his hockey friends. These traumatic experiences distorted Defendant's sexual development and produced hyper sexualism. He developed interest in "kinky" sexual behaviors such as voyeurism, acts of humiliation, and bringing extra partners into his relationships. This affected his relationship with his wife, who participated to a certain extent in his desired activities. Because of the effect of this disorder on their marriage, Mr. and Mrs. Sacco sought couples' therapy. This worked for a period. In the fall of 2025, however, Defendant's wife forcefully advised him that she no longer wanted to participate in this kinky sexual behavior. As a result, it appears that the Defendant withdrew and began engaging in online activities which, in this case, involved a site called "FetLife" and the above summarized chats with what Defendant believed to be the father of a ten-year-old child.

In discussing this conduct Dr. Goldsmith referred to the ten-year-old as being fictitious. However, Dr. Goldsmith clarified at the Hearing that Defendant himself did not know the child was fictitious and accepted the fact that he pursued conversations and acts to meet up with a "true person."

Nevertheless, Dr. Goldsmith testified that the Defendant did not have an inappropriate interest in children. He noted that, to the Doctor's knowledge, the Defendant did not historically put himself in positions where he was around children. There were no admissions of any prior sexual acts with minors. In Dr. Goldsmith's opinion, therefore, there was no evidence of pedophilia. Nor did the Defendant present any problematic antisocial factors, which can be a high indicator of future dangerousness.

Finally, Dr. Goldsmith opined that Mr. Sacco's paraphilic condition is highly treatable. He further noted that at this point Defendant is in the best position for treatment because his defenses have been broken down by the impact of the criminal charge, and if he were to remain incarcerated where he could not receive effective treatment, this would make treatment more difficult in the future. In the Doctor's opinion, if Defendant were released on the conditions proposed by Defendant's counsel and family, there would not be a risk of re-offense.

In his cross-examination, Dr. Goldsmith was taken through the methodology of his report, and it was noted that certain tests were not performed by him as part of his opinion, notably a static risk assessment (Static 99R) and a dynamic risk assessment

(Stable 2007).[2]  The AUSA also noted that, while Dr. Goldsmith had assumed that the Defendant did not put himself in positions where he was associated with younger children, the submissions of the Defendant himself with his work on youth hockey teams belied that assertion and could place him in the locker rooms with teen skaters.

Dr. Goldsmith was questioned regarding a series of chats involving Defendant, including the encrypted chats which had not previously been reviewed by him.  Also discussed was a 14 second audio that purported to record the ten-year-old being sexually abused by her father.  Dr. Goldsmith acknowledged that conduct Defendant indicated that he wanted to engage in with an underaged child would constitute nonconsensual abuse and deviant sexual acts.  It was also pointed out by the AUSA that the Defendant specifically mentioned his arousal regarding sexual conduct with the child, conduct which could be properly characterized as sadistic sexual acts.  In one important chat, Defendant indicated that he feels the same way about a relative who is younger than UC's daughter, but at the present time he is just admiring her from a distance.

### III. DISCUSSION

The statutory factors that a court must consider in making any detention decision are as follows:

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime . . . [which] involves a minor victim . . . ;

    (2) the weight of the evidence against the person;

    (3) the history and characteristics of the person, including—

---

[2] Those tests were performed in connection with the New Paradigm Short Report, and Dr. Goldstein indicated his concurrence with that Report.

- 8 -

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C.§ 3142(g).

Under the Bail Reform Act, a defendant awaiting trial must be released unless the release will present a risk of flight or danger, or both, and no set of conditions can reasonably protect against those risks. *See United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (explaining that the Bail Reform Act codified "traditional presumption favoring pretrial release for the majority of Federal defendants"). As understood by this Court, pretrial detention is the exception and release is the norm. "Although there is 'only a limited group of offenders who should be denied bail pending trial,' when there is 'a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate.'" *United States v. Brown*, 776 F. Supp. 3d 172, 177 (W.D.N.Y. 2025) (quoting *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) and *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985)).

As noted at the end of the hearing when I orally issued my ruling, this case presents difficult issues. The Court is mindful that the original Pretrial Services Report recommended release on conditions, and Dr. Goldsmith has agreed. Nevertheless, and while the Court has agreed that the Defendant has presented new evidence that warranted the reopening of the detention issue, I concur with Magistrate Judge Henry's ultimate conclusion that the unique facts of this case warrant detention.

Taking the factors one by one, there appears to be no dispute that the weight of the evidence is strong even with the Defendant's apparent affirmative act of wiping his cell phone and therefore depriving the Government of what evidence may have been on it. The conduct at issue involved text chats and images that have been produced, and the individual asserting that he was the child's father was in fact a Task Force Officer with the FBI. While Defendant was originally charged by Complaint, he has now been indicted. In sum, this factor weighs in favor of detention.

As for the nature and circumstance of the offense, the present charge is extremely serious, with a fifteen-year mandatory minimum sentence. In fact, because the victim in this case was a child, Congress has created a presumption in favor of detention. Magistrate Judge Henry assumed that any such presumption had been overcome by defense counsel's arguments, and while I agree with that conclusion, the statutory presumption it is still a factor for the Court to consider.

In addition, in the Court's view, the conduct here does not involve simply viewing images or engaging in "kinky" sex chat. Rather this conduct, designed to be protected from disclosure by using encrypted communication, involved the discussion of abusing

and raping a ten-year-old child.  The Defendant provided information about what was to be done, and how it was to be accomplished.  He took affirmative action by agreeing to drive to the Albany area, and he purchased or attempted to purchase items to facilitate the event.  Most disturbingly, he engaged in a series of discussions with the father about abusing his child, and listened to an audio recording of the abuse, but made no attempt to fulfill his oath as a police officer to report or in any way stop this conduct.  Rather, to the contrary, he encouraged it and actively attempted to participate in it.  The Court believes that this is much more akin to a contact type offense which, as acknowledged by Dr. Goldsmith, presents a high risk of re-offense.  The Court therefore concludes that the second factor weighs significantly in favor of detention.

The third factor, the Defendant's history and characteristics, overall weighs in favor of release.  The Defendant has no criminal history, has significant family support, can post a substantial bond, and is able to obtain sex offender treatment from a well-qualified provider upon release.

The final factor is the Defendant's danger to the community.  This factor, in some ways, merges with the discussion regarding the Court's ability to fashion conditions that will effectively mitigate that risk.  In the Court's view, Defendant is a risk to the public and, in particular, a risk of harm to, or to facilitate the harm or abuse of, children, either online or in person.  Recognizing and accepting the qualifications of Dr. Goldsmith, his opinion that Defendant has not shown an inappropriate interest in children is contradicted by the Defendant's own words and actions.  His noting to the UC of his interest in a young family member, who he was watching from afar, is chilling in light of the Defendant's

expressed desire to engage in nonconsensual and/or sadistic conduct. This Court is also concerned about the Defendant's potential access to online forms to participate in, or direct, abuse of minors. The Court notes that Dr. Goldsmith's opinion that the Defendant poses no risk to reoffend is specifically predicated upon this lack of interest in children, and the Court respectfully disagrees with that basic underlying premise.

With regard to conditions to mitigate the risk, the Court does not believe that it can set appropriate conditions in light of the nature and seriousness of the potential danger to the community. Defense counsel indicates that family members could be at Defendant's residence on a 24-hour basis, thus providing an assurance that the Defendant would have no hands-on contact with anyone in the home. However, the Probation Department does not have the facilities to assure that in fact occurs. Notably, Defendant engaged in the charged conduct while living with his devoted and attentive wife, so his ability to hide his conduct is well established. In addition, the Court agrees with the Government that online communications in this circumstance can be just as dangerous as hands-on conduct. While the Court could order that Defendant's communication be monitored, and that he be limited to one device, there is certainly no guarantee that the Defendant could not surreptitiously obtain an unmonitored device. This Court is aware that this has repeatedly happened, despite the best efforts of the Probation Officers. Defendant has shown sophistication in connection with online communications, including the use of encrypted applications. He and his family have a long-term association with the local police department, and the implication to the Court is that they may have assisted him in becoming notified of the potential charges, which then allowed him to wipe his phone.

After considering all the relevant factors, as well as the conditions of release that are available and their practicality, the Court concludes that the potential danger in this case is simply too high, and that conditions do not exist that would reasonably mitigate those severe risks.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Defendant's Motion to Reopen the Bail Hearing is granted; and it is further

**ORDERED**, that upon hearing the new evidence at the Second Bail Hearing, the Defendant's Motion to be released on Bail is again denied, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**SO ORDERED**.

Dated:   May 18, 2026
            Albany, NY

_____
Daniel J. Stewart
U.S. Magistrate Judge

- 13 -