UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT SACCO,<br><br>Defendant. | Case No. 1:26-CR-31 (MAD)<br><br>**<u>NOTICE OF APPEAL</u>** |

**DEFENDANT ROBERT SACCO'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REVIEW AND APPEAL OF MAGISTRATE JUDGE DANIEL STEWART'S DETENTION ORDER**

**INTRODUCTION**

Defendant Robert Sacco, by and through his undersigned counsel, Gottlieb Townsend, hereby submits this memorandum of law in support of Mr. Sacco's appeal of Magistrate Judge Daniel Stewart's order of detention.

Following two separate detention hearings, one in the Eastern District of New York before Magistrate Judge Marcia M. Henry, and now, most recently, in the Northern District of New York before Magistrate Judge Daniel J. Stewart, it is clear that there is no dispute about Mr. Sacco's extraordinary character, background, and significant familial support. There is also no dispute about the severity of the charge pending against Mr. Sacco, which on its own does not preclude pretrial release. The lingering concern expressed by both magistrate judges at the detention hearings is limited to Mr. Sacco's danger to the community and any potential access to children. For that reason, the defense specifically addresses Mr. Sacco's lack of danger to the community and why the Court should grant Mr. Sacco's bail application with the stringent conditions proposed by the defense.

The defense request for Mr. Sacco's pretrial release is further supported by two separate and independent experts; Eric Goldsmith, M.D., who was retained by the defense, and New Paradigm Psychological Services PLLC ("New Paradigm"), which was retained by the United States Probation Department. Dr. Goldsmith maintained throughout his psychiatric report and live testimony at the Renewed Detention Hearing that, Mr. Sacco **"is not at risk to reoffend while released to home; certainly not at risk to be a danger to underage children**." *See,* May 5, 2026 Detention Hearing Transcript, attached as Exhibit A, at 35:12 – 14. New Paradigm similarly concluded that Mr. Sacco is an average risk to reoffend and, most significantly, **"could be safely managed and treated effectively if mandated to any form or level of community supervision**." *See*, April 20, 2026 New Paradigm Psychological Services Report, attached as Exhibit B, at 14. (emphasis added).

Mr. Sacco recognizes that he is charged with a serious crime. All he is asking for is an opportunity to seek and begin adequate sex offender treatment at a time when it would be most beneficial and impactful, which can only occur if he is released pretrial.

## PROCEDURAL HISTORY

On January 23, 2026, Mr. Sacco was charged by complaint with Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e). On January 24, 2026, Mr. Sacco appeared in the Eastern District of New York before the Magistrate Judge Marcia M. Henry, for his initial appearance before being transferred to the Northern District of New York. At the initial appearance Judge Henry ultimately remanded Mr. Sacco but recognized that "*in some ways... the presumption has been rebutted based on some of the information... regarding Mr. Sacco's familial connection, his stability in the community, his steady employment...however on*

2

*the remaining statutory factors, I'm extremely concerned about Mr. Sacco's access to children.*"
*See*, Dkt No. 20, Ex. A, at 23:6 – 15.

On January 28, 2026, a grand jury indicted Mr. Sacco on one count of Attempted Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a) and (e).  On February 3, 2026, Mr. Sacco was arraigned in the Northern District of New York before Magistrate Judge Daniel Stewart, who primarily relied on Magistrate Judge Henry's findings and ordered a continuation of detention.  *See*, February 3, 2026 Text Minute Entry for Arraignment.

On March 26, 2026, the defense filed a motion with the Court seeking another detention hearing based on new and material evidence that focused primarily on the question whether Mr. Sacco posed a danger to the community if released on bail.  *See*, Dkt. No. 20 and 18 U.S.C. § 3142(f).  In support of this motion, we provided the Court with both a preliminary and a final psychiatric evaluation prepared by Dr. Goldsmith.  Also submitted were documents exhibiting extensive familial support as well as Mr. Sacco's extraordinary volunteer and charitable contributions.  *See,* Dkt. No. 20-3 and Dkt. No. 32, at 2.  Finally, the defense proposed revised and more restrictive conditions of release for Mr. Sacco that went beyond those initially recommended by Pretrial Services at the initial detention hearing.  Dkt. No. 20, at 1 – 3.  The proposed conditions were as follows (Mr. Sacco's proposal incorporated all the terms recommended by Pretrial Services (Dkt. No. 10, at 4) and included additional conditions proposed by the defense which are **bold)**:

- **A Personal Recognizance Bond in the amount of $1,000,000, secured by two financially responsible persons, Mr. Sacco's Aunt, Jean Tan and Mr. Sacco's father-in-law, Luis Cadavid;**

- **Cash posted in the amount of $100,000 by Luis Cadavid, Mr. Sacco's father-in-law;**

- Report to Pretrial Services as directed;

- Surrender any passport(s) and do not apply for or obtain a new passport;

- Restrict travel to New York City, Long Island, and the Northern District of New York;

- Submit to random home and community contact by Pretrial Services;

- Subject to home detention with location monitoring, enforced by Global Positioning System (GPS), with leave for court appearances, attorney visits, medical appointments, employment, and treatment specific to the offense charged, and other activities approved by Pretrial Services;

- Surrender firearms to local law enforcement authorities and submit verification of same to Pretrial Services;

- Submit to mental health treatment, **both individual and group therapy once a week with Dr. Shoshanna Must for sex offense therapy.** The defendant shall pay all or part of the cost of any required mental health treatment based on the ability to pay as determined by Pretrial Services;

- Refrain from areas frequented by children under the age of 18, including school yards, parks, playgrounds, fast food restaurants near schools, and arcades;

- Refrain from using computers or accessing the internet through any means. **All computers will be removed from Mr. Sacco's residence.** Consistent with Pretrial Services' Computer Restriction and Monitoring Program, Pretrial Services may inspect the home network, cellular phones, data and storage media devices, and/or external hard drives belonging to the defendant and/or located at the residence;

- Shall not have any contact or association with individuals under the age of 18. The defendant shall not communicate with any person under the age of 18 through written correspondence, telephone, or any electronic means. **Shall not permit any person under the age of 18 to enter Mr. Sacco's residence.**

- Avoid all contact, direct or indirect, with any person who is or who may become a victim or potential witness in the subject investigation or prosecution;

- Maintain residence at home in Huntington, New York;

- **A rotation of family members will be present in Mr. Sacco's home at all times to oversee him including Mr. Sacco's wife, Pilar Sacco, Mr. Sacco's mother-in-law and father-in-law, Silvia and Luis Cadavid, Mr. Sacco's brother, Dominick Sacco, Mr. Sacco's father, John Sacco, Mr. Sacco's stepmother, Divina Sacco, Mr. Sacco's sister-in-law Anais Sacco, and Mr. Sacco's aunt, Mimadelia Mendez. Any person coming into the home will not bring any electronics other**

4

> **than personal cell phones with password protection. If a laptop is necessary, then that person will make sure that there is two-factor authentication on the laptop connected to their personal cell phones; and**
>
> - **Pretrial Services will be given remote access to Mr. Sacco's security cameras that are currently set up at his home to ensure that no minors come inside or near the home. The cameras are set up through the Paramont CMS by InVid Tech application. The username and password for remote access will be provided. The camera model is PD1B-8NH2.** [1]

On May 5, 2026, the Court conducted the Renewed Detention Hearing that resulted in a continuation of detention. In addition to the defense brief in support of bail and oral argument, the defense presented Dr. Goldsmith to testify. In sum and substance, Dr. Goldsmith testified to a reasonable degree of psychiatric certainty that there was **no evidence of pedophilia, Mr. Sacco did not present any problematic antisocial factors and most importantly, that Mr. Sacco's paraphilic condition is *highly treatable*.** *See*, Ex. A, at 31:19 – 22. Further, Dr. Goldsmith concluded and emphasized that "**delay in treatment will likely result in Mr. Sacco once again hardening some of his psychological defenses. It will make treatment much more difficult. Because of the unmasking of everything right now, he is so ripe to participate in treatment.**" *Id*, at 36:20 –24. Dr. Goldsmith explained further that continued incarceration, where effective treatment is unavailable, will make future treatment much more difficult. *Id*, at 36:6 – 15; *see also*, Dkt. No. 32, at 7. Ultimately, Dr. Goldsmith determined that if Mr. Sacco were released under the strict conditions proposed by Pretrial Services and the defense, there would not be a risk of re-offense. *See*, Ex. A, at 35:8 – 14.

In addition to Dr. Goldsmith's preliminary and final psychiatric evaluations, New Paradigm, an independent forensic service provider **retained by the United States Probation Department**, conducted its own risk assessment for the Court and confirmed that *Mr. Sacco's risk*

---

[1] All angles of the cameras can be made available to the Court upon request. Currently, there are approximately eight cameras set up throughout the perimeter of the property.

*of reoffending is average, he could be safely managed in the community, and that he could be treated effectively if mandated to any form or level of community supervision.* See, Ex. B, at 14. (emphasis added). New Paradigm's assessment followed a Text Order from Magistrate Judge Stewart as follows: "*Finally, Counsel for Defendant is directed to advise the Court in writing if they object to allowing the United States Attorney, or the United States Probation Department, from sharing the Defendant's expert report with the psychologists at New Paradigm Psychological Services.*" Dkt. No. 23. The defense promptly responded with no objection. Dkt. No. 24.

Following the Renewed Detention Hearing on May 5, 2026, Magistrate Judge Daniel Stewart denied Mr. Sacco's motion for pretrial release under the strict conditions proposed by the defense. Accordingly, Mr. Sacco hereby appeals from the order of detention and asks this Court, as the court of original jurisdiction, to release Mr. Sacco under the strict conditions proposed by Pretrial Services as well as the additional stringent conditions requested by the defense.

## GOVERNING LAW

### A. Standard for District Court's Review of a Magistrate Judge's Order

18 U.S.C. § 3145(b) provides in pertinent part:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

A district court must review a magistrate judge's detention order *de novo* and is free to make new factual findings. 18 U.S.C. § 3145(b); *United States v. Dominguez*, 509 F. App'x 28, 30 (2d Cir. 2013).

Under the Bail Reform Act, generally, a court "shall order" a defendant's pretrial release unless the court determines that the defendant presents an unreasonable risk of flight or "will

endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). "[I]f there is probable cause to believe that the person committed . . . an offense involving a minor victim under section . . . 2251," there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(E). The government retains the "ultimate burden of persuasion," which requires establishing that the defendant presents a risk of flight by a preponderance of the evidence or a danger to the community by clear and convincing evidence. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). But, even when the defendant rebuts the presumption favoring detention, the fact that there was a presumption always "remains a factor to be considered among those weighed by the district court." *Id.*

Once the court has determined to grant a detention hearing under Section 3142(f), the court must consider "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." *United States v. Dai*, 2023 WL 11016392, at *6 (N.D.N.Y. Dec. 19, 2023) (citing 18 U.S.C. § 3142(g)).

### ARGUMENT

Based on consideration of all the evidence introduced in support of Mr. Sacco's Motion for Bond, we submit that he should be released under the strict conditions proposed by Pretrial Services and the defense. There is overwhelming evidence that Mr. Sacco is not a danger to the community and that he can be safely managed despite Magistrate Judge Stewart's concerns otherwise. Two different forensic experts independently assessed Mr. Sacco's risk of reoffending and his danger to the community. One expert, Dr. Goldsmith, was retained by the defense and the

other by the Probation Department.  The experts reached the conclusion that Mr. Sacco's risk was either a low or average risk of reoffending *but were unanimous that he does not pose any danger if mandated to any form or level of community supervision.*  As a result, we respectfully request that this Court reverse Magistrate Judge Stewart's order of detention and release Mr. Sacco under strict conditions pending trial so that Mr. Sacco can immediately obtain meaningful sex offender treatment with Dr. Shoshanna Must[2] while he is ripe to participate in treatment and while he is in the best psychological position to receive the maximum impact of treatment.  *See*, Ex. A, at 36:20 – 25 and 75:8 – 76:1.

**18 U.S.C. § 3142(g) FACTOR ANALYSIS**

1.  **Nature and Circumstances of the Offense and the Weight of the Evidence**

While neither Magistrate Judge Henry nor Magistrate Judge Stewart based the decision to order detention on this factor, we urge this Court to take into account Mr. Sacco's long history of himself being an underage victim of sexual abuse from the age of 10 until 16 and how his victimization impacted his behavior leading to his arrest.  *See*, Ex. A, at 21:7 – 22:14.

Both Dr. Goldsmith and New Paradigm addressed the sad reality that Mr. Sacco's own sexual abuse by a neighbor who was four years older than him as well as another adolescent who was a year older than him in addition to a mother of a hockey teammate of his who brought Mr. Sacco into her bedroom during a sleepover, had a direct impact on his obsession with "kinky" sex leading to the numerous text conversations with the undercover law enforcement agent.

There is no dispute that Mr. Sacco is facing a serious charge involving a crime against a minor.  However, we ask that this Court take into consideration that Mr. Sacco never met with or contacted an underage child in connection with the crime charged.  Based on the information

---

[2] Dr. Must has already been contacted and is prepared to promptly commence treatment with Mr. Sacco if he is released.  *See,* Shoshanna Must CV, attached as Exhibit C.

known to the defense, Mr. Sacco well understands the mandatory punishment if he is convicted of the charge. Considering all the circumstances of the crime and weight of the evidence, along with Dr. Goldsmith's and New Paradigm's evaluations, we submit that the evidence in support of Mr. Sacco's request for release under the proposed strict conditions is overwhelmingly in his favor.

### 2. History and Characteristics of Mr. Sacco

The extensive information previously introduced at the detention hearing before Magistrate Judge Stewart detailing Mr. Sacco's extraordinary character as well as the information set forth in the defense Motion for Bond (Dkt. No. 20) are incorporated here by reference. This factor indisputably weighs in favor of Mr. Sacco's release, as confirmed by Magistrate Judge Stewart. Dkt. No. 32, at 11. Magistrate Judge Stewart emphasized that Mr. Sacco has no criminal history, has significant family support, can post a substantial bond, and is committed to obtaining effective and intense sex offender treatment from a well-qualified provider if he is released on bail. *Id*.

### 3. Danger to the Community

With respect to Mr. Sacco's dangerousness, Magistrate Judge Stewart concluded that Mr. Sacco is a risk to the public and that there are no appropriate conditions that the Court could set in light of the potential danger to the community. Dkt. No. 32, at 11 – 12. We respectfully disagree. We submit that Magistrate Judge Stewart's determination on this issue is countered by two separate experts, Dr. Eric Goldsmith, a well-qualified expert in the field of psychiatry (*See*, Eric Goldsmith M.D. CV, attached as Exhibit D) who was retained by the defense and the Probation Department's expert *not retained by the defense* but by the Probation Department that sought to obtain an entirely independent analysis of Mr. Sacco's dangerousness and whether he could be safely managed with conditions. ***Both experts unanimously determined that Mr. Sacco is not a danger to the community if he were to be released with any form of supervision***. *See,* April 27, 2026 Goldsmith M.D. Psychiatric Report, attached as Exhibit E, at 2; *see also*, Ex. B., at 14.

9

Significantly, one of the defense's stringent conditions of release provides for intense sex offender treatment and counseling with Dr. Shoshana Must to begin immediately upon his release from detention.

As detailed in the defense Motion for Bond (Dkt. No. 20) and at the Renewed Detention Hearing, Dr. Goldsmith opined to a reasonable degree of psychiatric certainty that Mr. Sacco evidences *posttraumatic condition stemming from his exposure to childhood sexual abuse and sexualization*. *See,* Ex. E, at 2. Further, Dr. Goldsmith explained that stemming from his traumas, Mr. Sacco developed sex addiction behavior with a primary interest in consensual sexual acts involving voyeurism, and sexual masochism. *Id*. **However, most importantly, Dr. Goldsmith confirmed that Mr. Sacco *does not evidence a pedophilia disorder*.** *Id*. This is especially significant because as Dr. Goldsmith testified,

> The **most important assessment** that we do in these situations is looking to see what motivates the individual and what facilitates -- what motivates the defendant and what facilitates the defendant to engage in these sex offense crimes. **And so we always are looking to see whether or not the behavior was motivated by inappropriate sexual arousal with children, and whether or not there were antisocial factors that facilitated his actions**. These are the most important factors that we know from the literature that speak to issues about future dangerousness. If someone -- particularly if someone is a sex offender and there is evidence of antisocial characteristics, antisocial behaviors, then that is a high indicator of future dangerousness for the cohort of the sex offender. So you look to see whether or not is Mr. Sacco someone who has a previous criminal history; is he someone who has a history or pattern of rule breaking; does he have a conduct disorder history as a child; does he have oppositional defiant behavior as a child and adolescent; has he behaved in ways that would be considered not living up to certain social norms. So this a part of the assessment that I do for the lengthy interview of him, as well as his wife, to see if there is any evidence of these antisocial factors, **and I find no evidence whatsoever that Mr. Sacco evidences antisocial behavior or any antisocial personality characteristics.**

*See*, Ex. A, at 29:15 – 30:15.  Moreover, Dr. Goldsmith specifically reviewed the aforementioned proposed bail conditions and determined that if Mr. Sacco were released with those conditions, "… given the circumstances of his – of what motivated him and facilitated his sex offender behavior, and under the ripeness for treatment that he poses right now, and under the conditions that have been outlined for his home confinement, that **I find that he is not at risk to re-offend while released to home; certainly not at risk to be a danger to underage children**." *Id*, at 35:8 – 14.

In fact, New Paradigm's risk assessment came to the *same conclusion as Dr. Goldsmith.* Overall, New Paradigm's report was very positive for Mr. Sacco.  New Paradigm conducted a risk assessment using the Static-99R instrument.  *See*, Ex B, at 4.  This tool is designed to assist in the prediction of sexual recidivism among sex offenders by establishing a baseline of long-term risk for sexual recidivism. *Id*.  The risk assessment contains both static and dynamic factors.  *Id*.  Static factors are usually non-changeable life events that relate to risk for sexual recidivism and dynamic factors are personality characteristics.  *Id*.  New Paradigm's key findings were that Mr. Sacco was found to have only 1 of the 10 risk factors identified in the Static-99R.  *Id*, at 5.  The only factor identified was the unrelated victim factor and *all the remaining factors did not apply*.  *Id,* at 5 – 6.

New Paradigm also conducted the Stable-2007 assessment.  *Id*, at 6.  According to the developers of the Stable-2007, the Stable risk factors are personality characteristics, skill deficits, personal predilection, and learned behaviors that relate to risk for sexual recidivism.  *Id*.  In applying this assessment tool, New Paradigm found only one factor was a "definite problem," which was Sex Drive or Sexual Preoccupation; it further found "some problem" on only two of the risk factors: Significant Social Influences and Deviant Sexual Interest; and it found no problem at all on all the remaining factors including: Capacity for Relationship Stability, Emotional

11

Identification with Children, Hostility Toward Women, General Social Rejection or Loneliness, Lack of Concern for Others, Impulsivity, Poor Problem Solving Skills, Negative Emotionality or Hostility, Sex as Coping, and Cooperation with Supervision. *Id*, at 7 – 13.

Based on the foregoing tests performed by New Paradigm, it concluded that there was no information available that suggested Mr. Sacco's risk to be higher than average. *Id*, at 14. Further, New Paradigm explained that Mr. Sacco's risk is driven primarily by sexual preoccupation coupled with some degree of deviant sexual interests and poor situational control. *Id*. *But, when these are controlled, Mr. Sacco's risk is likely to reduce even further*. *Id*. However, most importantly, *New Paradigm concluded that data suggests that Mr. Sacco's risk is average and could be safely managed and treated effectively if mandated to any form or level of community supervision*. *Id*. This is precisely the same opinion and conclusion as Dr. Goldsmith.

### a. Findings of Fact by Magistrate Judge Stewart that are not Supported by the Evidence

We respectfully submit that Magistrate Judge Stewart in ordering continued detention relied on factual findings not supported by any of the evidence presented at the Renewed Detention Hearing.

As a threshold matter, Magistrate Judge Stewart attempted to equate Mr. Sacco's charged conduct to a "contact type offense." Dkt. No. 32, at 11. Factually speaking, such a determination inappropriately penalizes Mr. Sacco for conduct that never occurred. He never communicated with any purported minor or had any contact whatsoever with a minor. Despite all of the text messages introduced in evidence at the Renewed Detention Hearing, there was not a single text indicating that Mr. Sacco took any affirmative steps to travel or otherwise attempt to meet an underage individual or the undercover agent in this case.

12

In addition, Magistrate Judge Stewart expressed concerns regarding some of the proposed conditions requested by the defense; specifically, the condition that family members would be present in Mr. Sacco's residence on a 24-hour basis on a set schedule.  Dkt. No. 32, at 12. Magistrate Judge Stewart relied primarily on his belief that the Probation Department does not have the ability to ensure that this schedule is enforced. The defense respectfully disagrees with this assessment.  First, Probation was never given the opportunity to address the feasibility of this proposal.  Second, the defense has made particularized efforts to alleviate the dangerousness concern by including proposed conditions that include access to security cameras throughout the outside of Mr. Sacco's residence.

Probation will have unfettered access to the security cameras for inspection and analysis to confirm that no underage person enters or leaves the home.  Access to the cameras does not mean that Probation is required to monitor the cameras 24/7 but rather it was intended to permit random access and spot checks to ensure that no minors are on the property.  It is another layer of protection for the public and deterrence for Mr. Sacco, knowing that someone could be watching at any given moment without warning.  The defense also proposed a condition that removes all computers from the home and requires any cell phone brought into the home to have password protection.

Another proposed condition requested by the defense to further reduce any chance of Mr. Sacco's having inappropriate contact with an underage person is the prohibition of anyone under the age of 18 entering Mr. Sacco's home.

The defense suggested another condition at the Renewed Detention Hearing which imposed the sworn obligation of any family member who becomes aware of any violation of this Court's bail conditions to promptly disclose such violation to Mr. Sacco's attorneys.  *See*, Ex. A,

at 77:10 – 20.   The attorneys, as officers of this Court, will promptly inform the Court and the Government of the violation.  *Id*.

Another concern expressed by Magistrate Judge Stewart was his observation that Mr. Sacco engaged in criminal activity while living with his wife and was successful in hiding his unlawful conduct.  The defense maintains there is no basis to believe that Mr. Sacco would be able to get away with that behavior under the current circumstances.  Mr. Sacco's wife is now well aware of the conduct and is committed to ensuring that he complies with all conditions ordered by the Court.  Prior to his arrest, she had no reason to be suspicious that Mr. Sacco was engaged in any criminal activity.

Magistrate Judge Stewart also explained that he was concerned about Mr. Sacco's potential access to unmonitored electronic devices.  Dkt. No. 32, at 12.  While it may be true that historically this Court experienced other defendants surreptitiously obtaining access to an unmonitored device despite the best efforts of the Probation Officers; in this case, based on all the evidence presented in the defense Motion for Bond, there is no basis to believe that Mr. Sacco would do the same.  Mr. Sacco has no criminal history, he has significant family support, and he remains dedicated to seeking treatment if he is given the opportunity to be released pending trial.

We also respectfully reject any contention by the Government that because Mr. Sacco is a former law enforcement officer renders his alleged criminal conduct more serious.  The fact that Mr. Sacco is former member of law enforcement has no connection to the criminal conduct charged in the Indictment.  Instead, we submit that the explanation for Mr. Sacco's conduct was addressed by Dr. Goldsmith as well as New Paradigm in extensive detail above, and neither expert suggested that Mr. Sacco's law enforcement background played any role in the alleged criminal activity.

Finally, any suggestion by the Government that Mr. Sacco's family members were possibly responsible for informing Mr. Sacco about his impending arrest —and that this was the reason he wiped his phone before reporting to his supervisor, as he had been ordered to do on the day of his arrest—is, respectfully, without any merit.  Dkt. No. 32, at 12.  *There has been no evidence presented by the Government to support this contention* other than baseless speculative argument.  To credit such an accusation without any support would be an injustice.

## CONCLUSION

The defense respectfully requests that the Court release Mr. Sacco under the strict conditions proposed by Pretrial Services and the defense.  In the alternative, the defense requests the Court set a hearing to further address the issue of release.  18 U.S.C. § 3145(b).

DATED:      May 29, 2026
            New York, New York

                                        Respectfully submitted,

                                        Robert Sacco
                                        By Counsel

                        By:     _____/s/_____
                                        Robert C. Gottlieb
                                        Kaylee S. Kreitenberg
                                        GOTTLIEB TOWNSEND
                                        111 Broadway
                                        Suite 701
                                        New York, NY 10006

15